FILED
2015 Jul-13  AM 09:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SANTANO KELLEY, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 2:13-cv-01012-MHH |
| | } | |
| CITY OF FAIRFIELD, ALABAMA, | } | |
| et al,, | } | |
| | } | |
| Defendants. | } | |

## MEMORANDUM OPINION AND ORDER

When plaintiff Santano Kelley tried to stop two Fairfield police officers from towing his cars from a private lot, the officers arrested Mr. Kelley for obstructing governmental operations. A state court jury eventually found Mr. Kelley not guilty of the charge. As a result of his arrest and prosecution, Mr. Kelley filed suit against the City of Fairfield, Fairfield Police Chief Leon Davis, and the two officers who arrested him, Julius Hunter and Kelvin Dudley.[1] The

---

[1] The caption of Mr. Kelley's third amended complaint also names as defendants any Fairfield police officers who are Offficers Hunter's and Dudley's supervisors. "As a general matter, fictitious party pleading is not permitted in federal court" unless "the plaintiff's description of the defendant is so specific to be at the very worse, surplusage." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (internal quotation marks and citations omitted). Mr. Kelley's general reference to any and all of Officers Hunter's and Dudley's supervisors is not sufficiently specific to state a claim against these officers. Therefore the Court will dismiss Mr. Kelley's claims against these officers without prejudice. *See Richardson*, 598 F.3d at 738 (affirming dismissal of "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute" because this description "was insufficient to identify the defendant among the many guards employed" at the institute); *Moulds v. Bullar*d, 345 Fed. Appx. 387, 390 (11th Cir. 2009) (affirming dismissal of

operative complaint alleges several 42 U.S.C. § 1983 claims and several state law claims, including conspiracy, abuse of process, outrage, respondeat superior, violation of state due process, and trespass. Mr. Kelley also seeks a declaration that Fairfield Ordinance 878 is unconstitutional. (*See* Doc. 57).

The defendants have asked the Court to dismiss all claims except for Mr. Kelley's claim for declaratory relief.[2] (Docs. 60, 61, 62). For the reasons provided below, the Court finds that the motions are well-taken. Mr. Kelley's § 1983 claims based upon his arrest and prosecution fail to state a claim, so the Court will dismiss those claims. The Court will dismiss Mr. Kelley's state law tort claims against Officers Dudley and Hunter because those claims either fail to state a claim, or the officers are immune from liability for those claims. As a result, Mr. Kelley's respondeat superior claim against the City of Fairfield and Chief Davis fails too. Mr. Kelley's claim for declaratory relief shall proceed forward.

## I.   STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Pursuant to Rule 8(a)(2), a complaint must contain, "a short and plain

---

"John Doe corrections officers" when plaintiff "failed to describe some of those officers" and "gave general descriptions of others, such as by indicating the duty stations to which they were assigned").

[2] The Court held a hearing on the defendants' motions on October 22, 2014. A court reporter was present, and a transcript is available upon request.

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, at *1 (M.D. Ala. Mar. 26, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). "If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)." *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009) (internal citations omitted). When evaluating a Rule 12(b)(6) motion to dismiss, the Court must view the allegations of the operative complaint in the light most favorable to the plaintiff. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Fairfield Ordinance 878

On April 5, 1993, the City of Fairfield City Council adopted Ordinance 878. Ordinance 878 prohibits persons from leaving wrecked or non-operating vehicles

on public streets or private property.  (Doc. 57, ¶ 37; Doc. 64-1).[3]  The ordinance

provides in relevant part:

> Section 4.  <u>Disposition of Wrecked or Discarded Vehicles</u>.  No person
> in charge or control of any property within the City whether as owner,
> tenant, occupant, lessee, or otherwise, shall allow any partially
> dismantled, non-operating, wrecked, junked, or discarded vehicles to
> remain on such property longer than seventy-two hours; and no person
> shall leave any such vehicle on any property within the City for a
> longer time than seventy-two hours; . . . .

> Section 5.  <u>Impounding</u>.  The Chief of Police or any member of his
> department designated by him is hereby authorized to remove or have
> removed, any vehicle left at any place within the City which
> reasonably appears to be in violation of this Ordinance or lost, stolen,
> or unclaimed.  Any vehicle so taken up and removed shall be stored in
> a suitable place provided by the City.  A permanent record giving the
> date of the taking of each vehicle, the place where found and taken
> and a description of the vehicle shall be kept by the Chief of Police.

(Doc. 57, ¶ 38; Doc. 64-1, p. 2).

The ordinance also permits the City of Fairfield, after posting a notice, to

sell at public auction every six months vehicles that the City seizes under the

ordinance.  (Doc. 64-1, p. 2).  At no time relevant to Mr. Kelley's claims was

Ordinance 878 declared invalid.

---

[3] The Court may consider the text of Ordinance of 878 without converting the defendants'
motions to dismiss into motions for summary judgment because the ordinance is central to Mr.
Kelley's claim, and the authenticity of the ordinance is unchallenged.  *See Urquilla-Diaz v.
Kaplan Univ.*, 708 F.3d 1039, 1053 n.12 (11th Cir. 2015).

**B.     Mr. Kelley's Arrest and Prosecution**

On May 27, 2011, Fairfield police officers Julius Hunter and Kelvin Dudley removed cars from a private lot located at the corner of 58th Street and Avenue C in Fairfield because the cars had been left on the lot in violation of Fairfield Ordinance 878.  (Doc. 57, ¶¶ 12-13, 37).  Mr. Kelley owned some of the cars that were parked on the lot.

After neighbors notified Mr. Kelley that the officers were on the property, Mr. Kelley drove his wrecker to the lot.  (Doc. 57, ¶ 12-13).  He told Officers Hunter and Dudley that they were not allowed on the property.  Mr. Kelley explained that he had permission to use the property, and he asked the officers not to tow his vehicles.  (Doc. 57, ¶¶ 14-15).  When Mr. Kelley started to hook one of his cars to his wrecker, Officers Hunter and Dudley arrested Mr. Kelley for obstruction of government operations.  (Doc. 57, ¶¶ 16-17).  Officers Dudley and Hunter handcuffed Mr. Kelley and took him to the City of Fairfield jail.  Mr. Kelley made bond and received a June 9, 2011 court date.  (Doc. 57, ¶¶ 18-19).

On June 9, 2011, the Fairfield Municipal Court would not accept Mr. Kelley's "not guilty" plea, denied Mr. Kelley's request for an attorney, and found Mr. Kelley guilty without a trial.  (Doc. 57, ¶ 21).  Mr. Kelley learned afterwards that Fairfield Municipal Court records indicate that he pled guilty.  (Doc. 57, ¶ 22).

Mr. Kelley appealed his municipal court conviction. (Doc. 57, ¶ 24). The Circuit Court of Jefferson County set Mr. Kelley's case for a jury trial on March 3, 2013. The jury found Mr. Kelley not guilty of obstruction of government operations. (Doc. 57, ¶ 27).

## C.   Procedural History

Mr. Kelley filed a third amended complaint against the defendants on August 20, 2014. (Doc. 57). Mr. Kelley asserts eight federal § 1983 claims (counts one, two, three, four, five, six, seven, and twelve). He also asserts state law claims for conspiracy (count eight); abuse of process, malicious prosecution, and false imprisonment (count nine); outrage/intentional infliction of emotional distress (count ten);[4] respondeat superior (count eleven); violation of state due process (count thirteen); and trespass (count fourteen). Mr. Kelley also challenges the constitutionality of Fairfield Ordinance 878; Mr. Kelley seeks a declaration that the ordinance is unconstitutional (count fifteen).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendants ask the Court to dismiss all of Mr. Kelley's claims, except the claim for declaratory relief. (Docs. 60, 61, 62). The parties fully briefed the defendants' motions to dismiss.

---

[4] When the Court gave Mr. Kelley leave to file his third amendment complaint, the Court instructed Mr. Kelley that he should not include a claim for intentional infliction of emotional distress because the claim is not applicable to the incidents about which Mr. Kelley complains. (Doc. 56). The Court explained in that order why Mr. Kelley's intentional infliction of emotional distress claim was not viable as a matter of law. (Doc. 56, p. 2, n. 1). Mr. Kelley concedes that his outrage claim should be dismissed. (Doc. 64, p. 44). Therefore, the Court will dismiss with prejudice Mr. Kelley's claim for intentional infliction of emotional distress.

(Docs. 60-1, 60-2, 60-3, 63, 67).   On this record, the Court considers the defendants' motions.

## II.    ANALYSIS

### A.    Official Capacity Claims against Chief Davis, Officer Hunter, and Officer Dudley

The Court will dismiss Mr. Kelley's official capacity claims against Chief Davis, Officer Hunter, and Officer Dudley because the Court treats suits against municipal officers in their official capacities as suits against the municipality itself. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly. . . ."). Mr. Kelley has named the City of Fairfield as a defendant in this action, so his official capacity claims against Chief Davis and Officers Hunter and Dudley are unnecessary.

### B.    Mr. Kelley's 42 U.S.C. § 1983 Claims

#### 1.    § 1983 Claims against Officers Dudley and Hunter in their Individual Capacities (Counts Two, Three, Twelve)

Mr. Kelley's § 1983 claims against Officers Dudley and Hunter for unlawful arrest, failure to prevent unlawful arrest, and due process violations are barred by the doctrine of qualified immunity. "Qualified immunity shields government

officials performing discretionary functions from liability in their individual capacities unless their conduct violated clearly established statutory or constitutional rights." *Davis v. Markley*, 601 Fed. Appx. 799, 801 (11th Cir. 2015) (citing *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007)). "Police officers receive qualified immunity from false-arrest claims if they had arguable probable cause to make the arrest." *Id.* (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed to arrest [the] [p]laintiff." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) (internal quotation marks and citations omitted). "Whether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Id.*

Officers Dudley and Hunter charged Mr. Kelley with obstruction of governmental operations. Under Alabama law:

> a person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he: (1) intentionally obstructs, impairs or hinders the administration of law or other governmental functions; or (2) intentionally prevents a public servant from performing a governmental function.

Ala. Code § 13A-10-2. Mr. Kelley acknowledges that he "protested to the seizure of [his] vehicles" from the private lot, and he "attempted to remove a vehicle by

hooking it to his wrecker" to prevent the officers from impounding his car.  (Doc. 57, ¶¶ 15-16).   Reasonable officers, in the same circumstances, could have believed that Mr. Kelley was interfering with Officers Dudley and Hunter's execution of a valid municipal ordinance, such that the officers had probable cause to arrest Mr. Kelley.  Therefore, Officers Dudley and Hunter had arguable probable cause to arrest Mr. Kelley for obstruction of governmental operations, and Officers Dudley and Hunter are entitled to qualified immunity on Mr. Kelley's §1983 unlawful arrest claim.  Because Officers Dudley and Hunter had arguable probable cause to arrest Mr. Kelley, Mr. Kelley cannot state a § 1983 claim for failure to protect from unlawful arrest, assuming such a claim exists.[5]  Therefore, the Court will dismiss counts two and three.

Qualified immunity also bars Mr. Kelley's §1983 claim for violations of his due process rights based on Officers Dudley and Hunter's enforcement of Ordinance 878.  The Eleventh Circuit has held that when police officers enforce a statute that later is declared unconstitutional, the officers are entitled to qualified

---

[5] Police officers in a position to intervene to prevent another officer's excessive force have a duty to so.  *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998).  But it is unclear whether the duty to intervene exists for constitutional violations other than excessive force.  *See Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999) ("There is no controlling authority clearly establishing that once a police officer knows another officer has fabricated a confession in a police report for a warrantless arrest, that police officer has a constitutional duty to intervene to stop the other officer's conduct."); *Roddy v. City of Huntsville*, 947 F. Supp. 2d 1271, 1300 (N.D. Ala. 2013) ("Officer Lucas had no clearly established duty to intervene to prevent, much less undo, an unlawful arrest by a police officer of equal rank."); *Mehta v. Foskey*, 877 F. Supp. 2d 1367, 1381 (S.D. Ga. 2012) ("This Court is at pains to discern a clear rule in the Eleventh Circuit case law regarding an officer's liability for failing to intervene in an unlawful arrest. . . .").

immunity for arrests made before the statute was declared invalid.  *Cooper v. Dillon*, 403 F.3d 1208, 1220-21 (11th Cir. 2005) ("At the time of Cooper's arrest, the statute had not been declared unconstitutional, and therefore it could not have been apparent to Dillon that he was violating Cooper's constitutional rights."). When Officers Dudley and Hunter arrested Mr. Kelley, Ordinance 878 was in effect.  Officers Dudley and Hunter were "entitled to assume the current version [of Ordinance 878 was] free from constitutional flaws." *Id.* at 1220.  Therefore, Officers Dudley and Hunter are entitled to qualified immunity on Mr. Kelley's § 1983 claim for violation of his due process rights because the officers arrested Mr. Kelley while enforcing a municipal ordinance that had not been declared unconstitutional.   Accordingly, the Court will dismiss count twelve against Officers Dudley and Hunter.

### 2.  § 1983 Claims Against Chief Davis in his Individual Capacity

A supervisor may be individually liable under § 1983 only "if he personally participates in the act that causes the constitutional violation or where there is a causal connection between his actions and the constitutional violation that his subordinates commit." *Am. Fed'n of Labor & Congress of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1190 (11th Cir. 2011) (internal citation omitted).  Because Mr. Kelley's underlying § 1983 claims against Officers Dudley and Hunter fail to state a claim, Mr. Kelley's § 1983 supervisory liability claims against Chief Davis

necessarily fail as a matter of law.  *See Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009) ("The central tenant in both offenses is a constitutional or statutory violation, which we have not found.  As such, Plaintiffs' claims under a theory of supervisory liability fail because the underlying § 1983 claims fail."); *Lepper v. Nguyen*, 368 Fed. Appx. 35, 40 (11th Cir. 2010) ("Lepper's supervisory liability claims against Willis and Singer fail because Lepper has not shown a constitutional violation by persons under their supervision or control.").

### 3.   § 1983 Claims Against the City of Fairfield

"To establish municipality liability under § 1983, a plaintiff must show 'a direct causal link between a municipal policy or custom and the alleged constitutional violation.'"  *Willis v. Mock*, 600 Fed. Appx. 679, 685 (11th Cir. 2015) (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)).  "But 'an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.'"  *Id.*  (quoting *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996)).

Because Mr. Kelley's complaint does not state a claim against Officers Dudley and Hunter for a violation of his constitutional rights, Mr. Kelley cannot state a § 1983 claim against the City of Fairfield.  *See id.*  (because neither individual defendant violated the plaintiff's constitutional rights, the plaintiff's claim against the City failed as a matter of law); *McDowell v. Brown,* 392 F.3d

1283, 1289 (11th Cir. 2004) ("[T]o impose § 1983 liability on a municipality, a plaintiff must show . . . that [her] constitutional rights were violated. . . ."); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (neither the city nor its police commission had § 1983 liability where the jury found that a police officer had not violated the plaintiff's constitutional rights).  Accordingly, the Court will dismiss all § 1983 claims against the City of Fairfield.

### C.    Mr. Kelley's Claim for Violation of State Due Process

Mr. Kelley's claim for violations of Alabama's version of the due process clause fails to state a claim.  The Supreme Court of Alabama has noted that there is no authority that "recognizes a private right of action for monetary damages based on violations of the provisions of the Constitution of Alabama." *Matthews v. Ala. Agric. & Mech. Univ.*, 787 So. 2d 691, 698 (Ala. 2000); *see also Tomberlin v. Clark*, 1 F. Supp. 3d 1213, 1234 (N.D. Ala. 2014) (dismissing state law due process claim at the 12(b)(6) stage for failure to state a claim because "the Alabama constitution does not create a private right of action to sue for monetary damages.").  Accordingly, the Court will dismiss Mr. Kelley's state law due process claim.

### D.     Mr. Kelley's State Law Tort Claims (Counts Eight, Nine, and Fourteen) against Officer Dudley and Officer Hunter

Assuming that Mr. Kelley has properly asserted state law claims for conspiracy, malicious prosecution, abuse of process, false imprisonment, and trespass, state-agent immunity and statutory discretionary-function immunity under Alabama Code § 6-5-338 bar those state law tort claims against Officers Dudley and Hunter.[6]   "State-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Ex parte Kennedy*, 992 So. 2d 1276, 1280 (Ala. 2008).  In *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), a plurality of the Alabama Supreme Court clarified the scope of Alabama's state-agent immunity doctrine. That doctrine bars suit against law enforcement officers "exercising judgment in the enforcement of criminal laws of the State, including but not limited to, law enforcement officers' arresting or attempting to arrest persons" unless the officer acted willfully, maliciously, fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of law, or if the Constitution or laws of the United States or Alabama require otherwise.  *Cranman*, 792 So. 2d at 405; *see also Ex parte City of Midfield*, 161 So. 3d 1158, 1163 (Ala. 2014).

---

[6] As the Court explains in note 7, the Court concludes that Mr. Kelley has not stated a claim for malicious prosecution or abuse of process.

13

Section 6-5-338 of the Alabama Code provides that a law enforcement officer is "immun[e] from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."  Ala. Code § 6-5-338(a).  "*Cranman's* test for state-agent immunity governs whether law enforcement officers are entitled to statutory, discretionary-function immunity under § 6-5-338(a)."  *Brown v. City of Huntsville*, 608 F.3d 724, 741 (11th Cir. 2010); *see also Kennedy*, 992 So. 2d at 1281 (in *Blackwood v. City of Hanceville*, 936 So. 2d 495 (Ala. 2006), the Alabama Supreme Court "held that the test for determining whether an officer is entitled to immunity under § 6-5-338(a) is the one articulated in *Cranman* relating to State officers.")

In short, under Alabama law, a defendant who "(1) is a peace officer, (2) is performing law enforcement duties, and (3) is exercising judgment or discretion" is entitled to immunity.  *Howard v. City of Atmore*, 887 So. 2d 201, 204 (Ala. 2003) (internal quotations omitted).  When a defendant establishes that "the plaintiff's claims arise from a function that would entitle the State agent to immunity," the burden shifts to the plaintiff to show that the state-agent acted "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority."  *Ex parte Randall*, 971 So. 2d 652, 663–64 (Ala. 2007) (internal quotations omitted).

14

Officers Dudley and Hunter are peace officers who were exercising their judgment in arresting and pressing charges against Mr. Kelley. Therefore, the burden shifts to Mr. Kelley to demonstrate that Officers Dudley and Hunter acted "willfully, maliciously, fraudulently, in bad faith, or beyond [their] authority." *See Randall*, 971 So. 2d at 663–64. Mr. Kelley has not met this burden.

In his third amended complaint, Mr. Kelley states in a conclusory fashion that Officers Dudley's and Hunter's conduct was "gross, willful, intentional and malicious," (Doc. 57, p. 12), but Mr. Kelley does not provide factual allegations, which, if proven, would show that Officers Dudley and Hunter acted beyond their authority or with the requisite intent for Mr. Kelley to overcome the officers' defense of state-agent immunity.[7] The facts that Mr. Kelley alleges do not support

---

[7] Mr. Kelley's complaint contains one factual allegation that could be characterized as an allegation of willful conduct. Mr. Kelley asserts that Officer Hunter "made false statements in the [state] Complaint" pertaining to the obstruction of government operations charge against Mr. Kelley. (Doc. 58, ¶ 25). That factual allegation, though bare-boned, might be enough to enable Mr. Kelley to avoid Officer Hunter's immunity defense, but Mr. Kelley's state law claims against Officer Hunter still fail. The purported false statements are relevant to Mr. Kelley's malicious prosecution and abuse of process claims, but Mr. Kelley's third amended complaint does not state a claim under Alabama law for either malicious prosecution or abuse of process.

Under Alabama law, "[t]he elements of malicious prosecution are: (1) a judicial proceeding initiated by the defendant, (2) the lack of probable cause, (3) malice, (4) termination in favor of the plaintiff, and (5) damage." *Moon v. Pillion*, 2 So. 3d 842, 845 (Ala. 2008) (internal quotations and citations omitted). Because Officers Dudley and Hunter had probable cause to arrest Mr. Kelley, *see* pp. 8-9, *supra*, Mr. Kelley cannot state a claim for malicious prosecution.

To state a claim for abuse of process under Alabama law, a plaintiff must plead facts that demonstrate: "(1) the existence of an ulterior purpose; (2) a wrongful use of process, and (3) malice." *Moon*, 2 So. 3d at 846. "'[A]buse of process will not lie [where] no result was obtained that is unlawful or improperly attainable under the law.'" *Id.* at 847 (quoting *Dempsey v. Denman*, 442 So. 3d 63, 65 (Ala. 1983)) (plaintiff could not prove abuse of process claim where

the conclusory labels that he uses to describe Officer Dudley's and Officer Hunter's conduct.  Therefore, Officers Dudley and Hunter are immune from Mr. Kelley's state law claims.  The Court will dismiss the state law claims against the officers.

### E.     Mr. Kelley's Respondeat Superior Claim Against Chief Davis and the City of Fairfield (Count Eleven)

Mr. Kelley's respondeat superior claim fails to state claim upon which relief may be granted.  Mr. Kelley alleges that as a result of the City of Fairfield's and Chief Davis's negligent supervision and control over Officers Dudley and Hunter, the officers unlawfully seized and arrested him in violation of constitutional rights. (Doc. 57, ¶ 93).  "Municipalities may not be held liable for constitutional deprivations on the theory of respondeat superior."  *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1263 (11th Cir. 2010) (citing *Denno v. Sch. Bd. of Volusia Cnty., Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000)).  And "supervisory officials are not liable for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  *Keith v. DeKalb Cnty., Ga.*,

---

plaintiff alleged that officer misrepresented facts to the criminal court because the plaintiff was found not guilty on the charge).  Mr. Kelley acknowledged in his complaint that a jury found that he was not guilty of the obstruction of government operations charge against him.  (Doc. 57, ¶ 27).  Therefore, Mr. Kelley's abuse of process claim fails to state a claim.

Because Mr. Kelley cannot state a claim for malicious prosecution or abuse of process, the Court need not determine whether Officers Dudley and Hunter are immune from liability for these claims.  Officer Hunter's alleged false statement does not bear on Mr. Kelley's conspiracy, false imprisonment, or trespass claims; Officer Hunter is immune from those claims.

749 F.3d 1034, 1047 (11th Cir. 2014) (internal quotation marks and citation omitted). Therefore, to the extent that Mr. Kelley attempts to state a claim for respondeat superior against the City and Chief Davis based on Officers Dudley and Hunter's alleged constitutional violations, his claim fails.

Moreover, for an employer to be liable under the theory of respondeat superior, "the employee must first be liable for a tort." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001); *see also Latham v. Redding*, 628 So. 2d 490, 495 (Ala. 1993) ("If the agent is not liable for any tort, the principal is also absolved."). As explained above, Mr. Kelley has failed to state a state law claim against Officers Dudley and Hunter, or the officers are entitled to immunity on Mr. Kelley's state law tort claims. Therefore, Mr. Kelley may not state a respondeat superior claim against the City of Fairfield or Chief Davis.

## IV.  CONCLUSION

For the reasons outlined above, the Court **DISMISSES WITH PREJUDICE** all of Mr. Kelley's claims except for his claim for declaratory and injunctive relief (count fifteen). **On or before July 22, 2015**, the parties shall confer and electronically a file a notice with a proposed amended scheduling order attached.

**DONE** and **ORDERED** this July 13, 2015.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE