FILED

2019 Sep-30  PM 06:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **SANTANO KELLEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:13-cv-01012-MHH** |
| | } | |
| **CITY OF FAIRFIELD,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Santano Kelley and the City of Fairfield have filed cross motions for summary judgment.  Mr. Kelley asserts that the City's enforcement of the pre-amendment version of Ordinance 878 was unconstitutional because the City seized private vehicles on private property without permission or a valid warrant and failed to provide owners with notice or an opportunity to be heard before classifying the vehicles as "junk cars." (Doc. 57, ¶¶ 107-109; 111-112).  Mr. Kelley contends that the City revised Ordinance 878 because of this lawsuit.  Mr. Kelley seeks a declaratory judgment and damages "fully compensating [him] for the damages suffered as a direct and proximate result of" the City's seizure of vehicles under the Ordinance.  (Doc. 57, ¶ 117(f)).  In addition, Mr. Kelley seeks attorney fees and costs and "[s]uch other and further relief as the court finds proper." (Doc. 56, ¶ 117(g)-(h)).

The City contends that Mr. Kelly's claim is mooted by the City's 2017 revision of Ordinance 878, that Mr. Kelley lacks standing to assert a claim for declaratory relief or damages, and that Mr. Kelley has failed to establish a protected property interest in the seized vehicles.  (Doc. 101, p. 2).  For the reasons explained below, the Court will grant the City's motion and deny Mr. Kelley's motion for summary judgment.

## I.  SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  FED. R. CIV. P. 56(c)(1)(A).  When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party.  *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018).  "The court need consider only the cited materials, but it may

consider other materials in the record." FED. R. CIV. P. 56(c)(3).

Cross motions for summary judgment do not alter the Rule 56 standard. *See United States v. Oakley*, 744 F.2d 1553, 1555-56 (11th Cir. 1984) ("Cross motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."). "In practice, cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist." *Georgia State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015) (quoting *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983)) (internal quotation marks and brackets omitted). "If both parties proceed on the same legal theory and rely on the same material facts ... the case is ripe for summary judgment." *NAACP*, 775 F.3d at 1345 (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)) (internal quotation marks omitted) (alteration supplied by *NAACP*).

## II. BACKGROUND

Mr. Kelley tows, repairs, and restores cars. (Doc. 110-1, ¶¶ 3-4). When working on them, Mr. Kelley keeps cars on a private lot that he has permission to use. (Doc. 102-1, p. 1; Doc. 105-1, ¶ 4). He often does not perfect title on the

vehicles until he is ready to sell them.  (Doc. 110-1, ¶¶ 4–5).  Some of the vehicles are so old that Mr. Kelley cannot obtain a valid title for them.  (Doc. 11-8, ¶ 8 ); Ala. Code § 810-5-75-.68 (2).

There are six cars at the center of this case:  a black 1974 Triumph Spitfire, a red 1969 Datsun 1600 SPL311, a blue 1991 Ford Aerostar, a blue 1991 Ford Probe, a brown 1983 Jeep Wagoneer, and a white 2000 Mercedes-Benz M Class. (Doc. 105-1, ¶ 3,  Doc. 107-1, p. 2; Doc. 107-2, p. 2; Doc. 107-3, p. 2; Doc. 107-4, p. 2; Doc. 107-5, p. 2; Doc. 107-6, p. 2).[1]  As of May 27, 2011, Mr. Kelley had a certificate of title to only one of the vehicles—the Jeep Wagoneer.  (Doc. 110-1, ¶ 6).  Because of the age of the Spitfire and the Datsun, Mr. Kelley could not acquire certificates of title for those vehicles.  (Doc. 11-1, ¶ 8).  Mr. Kelley did not obtain a certificate of title for either the Ford Probe or the Ford Aerostar until April 6, 2012. (Doc. 102-5, p. 1; Doc. 102-6, p. 1).  Mary Phillips owned the Mercedes-Benz.  (Doc. 105-2, ¶ 3).

Pre-amendment, Ordinance 878 prohibited persons from discarding "junked" vehicles on property within city limits.  (Doc. 102-8, p. 2).  When the events at issue in Mr. Kelley's lawsuit transpired, Ordinance 878 provided:

> Section 4.  <u>Disposition of Wrecked or Discarded Vehicles</u>.  No person in charge or control of any property within the City whether as

---

[1]  The record reveals some disagreement about the year and models of the vehicles.  For simplicity, the Court refers to the vehicles as described in Mr. Kelley's affidavit.  (Doc. 105-1, ¶ 3).

owner, tenant, occupant, lessee, or otherwise, shall allow any partially dismantled, non-operating, wrecked, junked, or discarded vehicles to remain on such property longer than seventy-two hours; and no person shall leave any such vehicle on any property within the City for a longer time than seventy-two hours; . . . .

Section 5. <u>Impounding</u>. The Chief of Police or any member of his department designated by him is hereby authorized to remove or have removed, any vehicle left at any place within the City which reasonably appears to be in violation of this Ordinance or lost, stolen, or unclaimed. Any vehicle so taken up and removed shall be stored in a suitable place provided by the City. A permanent record giving the date of the taking of each vehicle, the place where found and taken and a description of the vehicle shall be kept by the Chief of Police.

(Doc. 102-8, p. 2).

Pre-amendment, the ordinance allowed the owner of an impounded vehicle to "redeem the same at any time prior to its sale by paying the reasonable expense of taking the vehicle in charge, and its maintenance and storage." (Doc. 102-8, p. 4). After three months, the Chief of Police was authorized to sell the impounded vehicles at a public auction "after giving public notice of the time and place of the sale." (Doc. 102-8, p. 4).

On May 27, 2011, Weil Wrecker Service, at the behest of the City of Fairfield, towed the six vehicles at issue from the private lot that Mr. Kelley used. (Doc. 105-1, ¶ 4). The next day, Mr. Kelley went to the Chief of Police at the Fairfield Police Department and tried to get his cars back. (Doc. 105-1, ¶ 6). The Chief of Police instructed Mr. Kelley to go to Fairfield City Hall. (Doc. 105-1, ¶ 7). Once there, Mr. Kelley was sent back to the police department. (Doc. 105-1, ¶ 8). Mr. Kelley

attempted to file a complaint about his vehicles, but the Chief of Police would not allow him to do so.  (Doc. 105-1, ¶ 9).

Mr. Kelley asserts that he went to the tow company about two weeks later and tried to retrieve his cars, but he was told that they had been sold.  (Doc. 105-1, ¶ 10). Records from Weil Wrecker Service indicate that the Ford Probe, Jeep Wagoneer, and Ford Aerostar were sold on September 21, 2011 for $425, $425, and $525, respectively, and the Triumph Spitfire and the Datsun were sold on March 20, 2013 for $500 and $1500, respectively.  (Doc. 107-1, p. 3; Doc. 107-2, p. 3; Doc. 107-7, pp. 2–3).

On May 28, 2013, Mr. Kelley filed his complaint in this action.  (Doc. 1).  The Court dismissed with prejudice all but Mr. Kelley's declaratory judgment claim. (Doc. 69).  In late 2016, the parties agreed upon a revision to Ordinance 878 that "adequately addresses [Mr. Kelley's] constitutional concerns."  (Doc. 83, p. 1).  The City notified the Court on March 14, 2017 that the Fairfield City Council had adopted the revised Ordinance 878.  (Doc. 87, p. 1).  The revised Ordinance 878, in pertinent part, creates a new notice procedure for vehicle impoundment:

> Any regularly employed and salaried law enforcement officer of this city or other employee of the city designated by the city council, who has reasonable grounds to believe that a motor vehicle has been abandoned, shall affix to the windshield or other prominent part of the vehicle, a tow warning emblem. The emblem shall be five by seven inches or larger, bright orange in color, with the printed words "Towing Warning" in bold letters at least two inches high, and shall also state that unless the vehicle is removed before ___, a.m./p.m. on the _____

6

> of the day of ____, ___, the vehicle will be impounded and taken to ____, and after 60 days it will be sold to recover the costs of removal, storage, and sale. . . . The time set for removal shall be at least seven days after the emblem is affixed.

(Doc. 87 p. 6); City of Fairfield Municipal Ordinance 878.5(a).   The revised ordinance also codifies procedures for notice after the removal of vehicles:

> Within 48 hours of the removal of such vehicle, the chief of police and/or his designee shall give notice to the registered owner of the vehicle, if known, and also to the owner occupying the private property from which the vehicle was removed, if known, that such vehicle has been impounded and stored for violations of this ordinance. . . . The police department shall, within five days after a motor vehicle is impounded, notify the state department of motor vehicles of the impoundment of the motor vehicle, and such notification shall include such information as is available that will enable the department of motor vehicles to identify the registered owner of the vehicle.

(Doc. 87, p. 7); City of Fairfield Municipal Ordinance 878.5(d)-(e). Additionally, revised Ordinance 878 provides for a pre-removal hearing:

> The persons to whom the notices are directed and/or their duly authorized agents may file a written request for a hearing before the police chief and/or his designees within the seven-day period of compliance described in Section 878.5 (a) for the purposes of defending the charges by the City. The hearings shall be held as soon as practicable after the filing of the request and the persons to whom the notices are directed shall be advised of the time and place of such hearing at least three days in advance thereof.  At any such hearing, the City and/or the persons to whom the notices have been directed may introduce such witnesses and/or evidence as either party deems necessary.

(Doc. 87, p. 6); City of Fairfield Municipal Ordinance 878.5(b).

The City argues that the revisions to Ordinance 878 have mooted the controversy between the parties such that this Court no longer has jurisdiction over this matter and must dismiss Mr. Kelley's claim for declaratory judgment. (Doc. 101, p. 5).  Mr. Kelley asserts that a controversy still exists and that he is entitled to summary judgment.  (Doc. 102).

## III.   DISCUSSION

Under Article III of the Constitution, federal courts may adjudicate only actual cases and controversies. *Allen v. Wright*, 468 U.S. 737, 750 (1984).  The Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that "a declaratory judgment may be issued only in the case of an 'actual controversy.'"  *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999) (citing *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985)).  To merit a declaratory judgment, a litigant must, at a minimum, "have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). The actual controversy must exist not only when the plaintiff files a complaint, but also throughout all stages of the action.  *Flanigan's Enterprises, Inc. v. City of Sandy Springs*, 868 F.3d 1248, 1255 (11th Cir. 2017) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)).  For the Court to have jurisdiction to issue a declaratory judgment, Mr. Kelley "'must allege facts from which the continuation

8

of the dispute may reasonably be inferred'" and "assert a reasonable expectation that the injury [he has] suffered will continue or will be repeated in the future." *Malowney*, 193 F.3d at 1347 (quoting *Emory*, 756 F.2d at 1552).

The City of Fairfield argues that Mr. Kelley lacks standing to assert a claim for declaratory relief and that there is no actual controversy between the parties because the City's revision of Ordinance 878 has mooted this action. (Doc. 101, p. 5). The Court finds that Mr. Kelley's claim for declaratory relief is moot and that Mr. Kelley cannot recover damages from the City of Fairfield. Mr. Kelley is entitled to attorney fees because he is the prevailing party in this action.

### A. Mootness

Under the mootness doctrine, a case becomes moot and must be dismissed "if an event occurs . . . that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Flanigan's Enterprises*, 868 F.3d at 1255 (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). An exception exists for "voluntary cessation" of allegedly illegal conduct. The United States Supreme Court has held that voluntary cessation does not moot a case because:

> [a] controversy may remain to be settled in such circumstances, e.g., a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.

*United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).  This exception does not

apply where "subsequent events made it absolutely clear that the allegedly wrongful

behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v.*

*Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000).

If Mr. Kelley cannot establish a "reasonable expectation that the challenged

practice will resume after the lawsuit is dismissed," then his request for declaratory

judgment is moot.  *Jews for Jesus, Inc. v. Hillsborough Cty. Aviation Auth.,* 162 F.3d

627, 629 (11th Cir. 1998).  "The test for determining that no such reasonable

expectation exists is ordinarily a 'stringent' one and accordingly, the party asserting

mootness generally bears a 'heavy burden of persua[ding] the court that the

challenged conduct cannot reasonably be expected to start up again." *Flanigan's*

*Enterprises*, 868 F.3d at 1256 (citing *Friends of the Earth*, 528 U.S. at 189).  But

government entities operate under a strong presumption that they are unlikely to

resume illegal conduct.  *Flanigan's Enterprises*, 868 F.3d at 1256.  Thus, "once the

repeal of an ordinance has caused our jurisdiction to be questioned, the plaintiff bears

the burden of presenting affirmative evidence that its challenge is no longer moot."

*Flanigan's Enterprises*, 868 F.3d at 1256 (quoting *Nat'l Advert. Co. v. City of*

*Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005).

The City of Fairfield has adequately called into question this Court's

jurisdiction based on the 2017 amendment to Ordinance 878.  (Doc. 87, p. 5-10).  In

November 2016, the parties informed the Court that they had reached agreement on a revision to Ordinance 878 that "adequately addresse[d] the constitutional concerns of [Mr. Kelley] related to the prior version of the ordinance." (Doc. 83, p. 1).  In March 2017, the City notified the Court that the Fairfield City Council adopted the revised language of Ordinance 878.  (Doc. 87, p. 1).  The new ordinance provides procedures for notice both before and after motor vehicles are towed.  (Doc. 87, p. 6-7); City of Fairfield Municipal Ordinance § 878.5 (a), (d), (e). The revised ordinance also grants vehicle owners a hearing in which the owners may present witnesses and evidence to defend against the City's charges.  (Doc. 87, p. 6); City of Fairfield Municipal Ordinance § 878.5 (b).  The burden thus falls on Mr. Kelley to present affirmative evidence that there is a reasonable expectation that the City of Fairfield will revert to its former practices upon the dismissal of his lawsuit.

In *Flanigan's Enterprises*, the Eleventh Circuit Court of Appeals sitting *en banc* identified three broad factors for district courts to examine when determining whether the repeal of legislation moots a pending case.  First, a district court must "ask whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate [the Court's] jurisdiction." *Flanigan's Enterprises*, 868 F.3d at 1257.  Second, the district court must ask "whether the government's decision to terminate the challenged conduct was unambiguous." *Flanigan's Enterprises*, 868 F.3d at 1257.  Finally, the district court must ask "whether the

government has consistently maintained its commitment to the new policy or legislative scheme." *Flanigan's Enterprises*, 868 F.3d at 1257. No factor is dispositive; a district court must consider the entirety of the relevant circumstances. If "the totality of the circumstances persuades the court that there is no reasonable expectation" that the City of Fairfield will reenact the former Ordinance 878, then the Court must dismiss the case as moot. *Flanigan's Enterprises*, 868 F.3d at 1257.

Turning to the first factor, the Court may consider "the timing of the [revision], the procedures used in enacting it, and any explanations independent of this litigation which may have motivated it." *Flanigan's Enterprises*, 868 F.3d at 1257. This factor weighs against the City's argument for mootness. Mr. Kelley filed his lawsuit on May 28, 2013, two years after the vehicles at issue were towed. At that point, Ordinance 878 had been in effect for more than 20 years. (Doc 102-8, p. 5). The City of Fairfield did not revise and approve the new version of Ordinance 878 until 2017, when this case had been pending for more than three years. (Doc. 87). The timing of the City's action, after 20 years of inaction, suggests an attempt to avoid liability. This suggestion is tempered only slightly by the City's efforts to work with Mr. Kelley to address his constitutional concerns. The Court appreciates this cooperation, but a municipality should not await a federal lawsuit before remedying an unconstitutional ordinance.

Under the second factor, a district court must "consider whether the actions that have been taken to allegedly moot the case reflect a rejection of the challenged conduct that is both permanent and complete." *Flanigan's Enterprises*, 868 F.3d at 1257. In *Flanigan's Enterprises*, the City of Sandy Springs, Georgia, despite defending the constitutionality of its prior ordinance for more than a decade, "unanimously enacted a full and public repeal of the challenged provision; its counsel ha[d]—on two separate occasions—warranted its commitment to the repeal; and it ha[d] unanimously and publicly adopted a resolution affirming those representations." *Flanigan's Enterprises*, 868 F.3d at 1262. Here, the Court cannot infer such permanence in the City of Fairfield's repeal of Ordinance 878. The City, in its briefs, does not concede that the former version of Ordinance 878 was unconstitutional. (Doc. 107, p. 17-20). But Mr. Kelley has not provided evidence that indicates that the City of Fairfield's revision is an ambiguous termination of the prior ordinance. *Flanigan's Enterprises*, 868 F.3d at 1262 ("Whether the City defended the Ordinance and/or continues to believe it was constitutional provides only weak evidence, if any, that its repeal was ambiguous . . . ."). The City of Fairfield's legislative repeal lends itself to a finding of permanence, unlike the revision of, for example, a judicial standing order that a single official may change. *Edwards v. Cofield*, 301 F. Supp 3d 1136, 1143 (M.D. Ala. March 21, 2018) (ease

with which standing bond orders could be changed by single official weighed against mootness finding).

Under the third factor, the Court considers "whether the government has consistently maintained its commitment to the new policy or legislative scheme." *Flanigan's Enterprises*, 868 F.3d at 1257. In *Flanigan's Enterprises*, the Eleventh Circuit was "unable to adequately judge [the] commitment to the new scheme" because the challenged ordinance was repealed only after the Eleventh Circuit granted rehearing *en banc*. *Flanigan's Enterprises*, 868 F.3d at 1254, 1262. Still, the Eleventh Circuit found a public commitment, namely a city council resolution not to reenact the repealed provision, weighed in favor of a finding of mootness. *Flanigan's Enterprises*, 868 F.3d at 1262. Here, the City of Fairfield has made no such unambiguous statement of its commitment not to revert to the prior version of Ordinance 878, but with no evidence to the contrary, the Court must consider the Fairfield City Council's vote to repeal the prior version of Ordinance 878, the fact that the City worked with Mr. Kelley in crafting the new ordinance, and the manner in which the new ordinance addresses the notice and hearing deficiencies of the old ordinance as weighing in favor of a finding that the City is committed to the new legislative scheme.

While this case lacks "substantial evidence leading [the Court] to believe there is no reasonable expectation that the same or similar provision will be reenacted"

14

per *Flanigan's Enterprises*, Mr. Kelley has not demonstrated that the City of Fairfield is not committed to the new version of Ordinance 878. Mr. Kelley has not shown from the totality of the circumstances that there is a reasonable expectation the City of Fairfield will revert to the old version of Ordinance 878. Consequently, the Court concludes that Mr. Kelley's claim for declaratory relief is moot.

## B. Nominal Damages and Attorney Fees

As part of his declaratory judgment claim, Mr. Kelley requests a refund of towing and storage charges and other fees that he paid to recover the vehicle that the City seized pursuant to the old version of Ordinance 878. (Doc. 56, ¶ 117(c)). Mr. Kelley also seeks "[a]n award of damages . . . fully compensating [him] for the damages suffered as a direct and proximate result of" the City's seizure of his property. (Doc. 56, ¶ 117(f)). In addition, Mr. Kelley seeks attorney's fees and costs and "[s]uch other and further relief as the court finds proper." (Doc. 56, ¶ 117(g)-(h)).

The Court initially found that it could, if Mr. Kelley were successful in his declaratory judgment claim, award Mr. Kelley a refund of towing and storage charges and other fees he paid to recover the seized vehicles, along with attorney's fees and costs, and "such other relief as necessary to remedy the consequences of the constitutional infirmity." (Doc. 99, p. 4). However, counsel for Mr. Kelley conceded at a motion hearing that Mr. Kelley did not recover the vehicles and,

therefore, did not pay fees or charges for which he could receive a refund.  (Minute entry for December 14, 2017 motion hearing).   The only remaining claim for damages would be for nominal relief to redress the consequences of the alleged constitutional infirmities.

The Eleventh Circuit Court of Appeals, unlike some other circuit courts of appeal, disfavors the use of a prayer for nominal damages to save an otherwise moot constitutional challenge.   The Eleventh Circuit has recognized two narrow exceptions to this rule, one where "a judgment in favor of a plaintiff requesting only nominal damages would have a practical effect on the parties' rights or obligations," and the other where "nominal damages will be the only appropriate remedy to be awarded to a victorious plaintiff in a live case or controversy."   *Flanigan's Enterprises*, 868 F.3d at 1263-64.   In the context of a now-repealed municipal ordinance, the Eleventh Circuit has stated that the use of a prayer for nominal damages to allow the Court to pass judgment on the ordinance's constitutionality "would surely constitute an impermissible advisory opinion."   *Flanigan's Enterprises*, 868 F.3d at 1270.

Mr. Kelley's prayer for nominal damages is not sufficient to save his mooted constitutional challenge.  An award of nominal damages to Mr. Kelley would "serve no purpose other than to affix a judicial seal of approval to an outcome that has

already been realized." *Flanigan's Enterprises*, 868 F.3d at 1264.  As such, Mr. Kelley may not use his claim for damages to sustain this action.

With respect to Mr. Kelley's request for an award of attorney fees, the inquiry is somewhat different because Mr. Kelley does not have to prove that the pre-amendment version of Ordinance 878 was unconstitutional before he may recover fees under 42 U.S.C. § 1988.  To be entitled to an award of attorney fees, Mr. Kelley must be a "prevailing party."  Under previous circuit precedent, Mr. Kelley could have recovered attorney fees based on a showing that his suit "prompt[ed] defendants to take action to meet plaintiff's claim." *Church of Scientology Flag Service, Org. v. City of Clearwater*, 2 F.3d 1509, 1513 (11th Cir. 1993) (citing *Nadeua v. Helgemoe*, 581 F.2d 275, 279 (1st Cir. 1978)).  The United States Supreme Court rejected this "catalyst theory" for claiming attorney fees under fee-shifting statutes in *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dept of Health & Human Res.*, 532 U.S. 598 (2001).  Under *Buckhannon*, even if the plaintiff's lawsuit caused the defendant to take action – and even if it appears that the defendant would not have acted without the compulsion of a lawsuit – a district court may not award fees unless the plaintiff has received "the necessary judicial *imprimatur* on [a] change" in the law. *Buckhannon*, 532 U.S. at 605.  To recover fees, a plaintiff must "achieve[] a "'judicially sanctioned change in the legal relationship of the parties.'" *Aaron-Brush v. Atty Gen. of Ala.,* 678 Fed. Appx. 792, 795–96 (11th Cir.

2017) (per curiam) (quoting *Buckhannon*, 532 U.S. at 605).  For example, a district court's issuance of a consent decree, judgment on the merits of a plaintiff's claim, or a settlement agreement incorporated into the final order of dismissal would constitute such a "judicially sanctioned change."  *Aaron-Brush v. Atty Gen. of Ala.,* 678 Fed. Appx. at 795-796.

Mr. Kelley has caused a revision to the City of Fairfield's municipal code. There is no doubt that he was the catalyst for this change, but the parties' cooperation to enact the revision to Ordinance 878 without the involvement of the Court does not provide the "judicial imprimatur" required to support an award of attorney fees.

**CONCLUSION**

For the reasons discussed above, the Court dismisses this action as moot and orders the parties to pay their own fees and costs.

**DONE** and **ORDERED** this September 30, 2019.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE